**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JEFFREY HILL,**

    **Plaintiff,**

 **v.**                   **CASE NO:**

**CITY OF TAMPA,**

    **Defendant.**

                                    /

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JEFFREY HILL, (hereinafter "Plaintiff" or "Mr. Hill"), a Florida

resident, by and through the undersigned counsel, hereby sues Defendant,

CITY OF TAMPA (hereinafter "Defendant," or "The City") and alleges:

**INTRODUCTION**

1.    The Plaintiff brings this action against Defendant, his former

employer, seeking to recover damages for unlawful discrimination based on

disability and age, and retaliation in violation of the Americans with

Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., the

Age Discrimination in Employment Act of 1967, as amended ("ADEA"), 29

U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations, and the Florida Workers' Compensation Retaliation Statute, Fla. Stat. § 440.205.

2.      As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his disability and age, and retaliated against him for filing a workers' compensation claim and complaining about workplace violations in violation of his rights under the ADA, ADEA, Title VII, and Florida's Workers' Compensation Retaliation Statute.

3.      As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.      Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental

jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

## **PARTIES**

8.     Plaintiff is Jeffrey Hill, a 62-year-old male who has been diagnosed with diabetes, a condition that substantially limits major life activities including endocrine function and requires frequent bathroom breaks.

9.     Plaintiff is a member of a class protected against discrimination

based on his age and disability under the ADA, ADEA, Title VII, and is protected against retaliation under Title VII and the Florida Workers' Compensation Retaliation Statute.

10.    At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

11.    At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA, ADEA, Title VII, and the Florida Workers' Compensation Retaliation Statute.

12.    The Defendant, CITY OF TAMPA, is a municipal corporation and government entity with its principal place of business located at 306 East Jackson Street, 5N, Tampa, Florida 33602, and conducts operations throughout Hillsborough County, Florida, including its Parks and Recreation Department located at 7525 N. Boulevard, Tampa, FL 33604.

13.    At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, and employed Plaintiff in its Parks and Recreation Department.

14.    At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state

statutes including, but not limited to the ADA, ADEA, Title VII, and the Florida Workers' Compensation Retaliation Statute.

15.    Accordingly, Defendant is liable under the ADA, ADEA, Title VII, and the Florida Workers' Compensation Retaliation Statute for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

16.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

17.    On December 17, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination, age discrimination, and retaliation.

18.    On December 30, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-2026-01108) against Defendant.

19.    This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

20.    All conditions precedent to bringing this action have been

performed or have occurred.

## GENERAL ALLEGATIONS

21.     In August 2023, Plaintiff Jeffrey Hill began his employment with Defendant City of Tampa as an Automotive Equipment Operator II in the Parks and Recreation Department, located at 7525 N. Boulevard, Tampa, FL 33604. Plaintiff's job responsibilities included picking up waste and changing out trash cans at parks throughout the City of Tampa.

22.     At the time of his employment, Plaintiff was 61 years old and had been diagnosed with diabetes, a condition that substantially limits major life activities including endocrine function. Due to his diabetes, Plaintiff required frequent bathroom breaks as a reasonable accommodation to perform his job duties.

23.     From day one of his employment, Plaintiff was discriminated against because of his age. Despite his qualifications and experience, Plaintiff faced disparate treatment and hostility from supervisors and coworkers based on his advanced age.

24.     Plaintiff's initial supervisor was David Perkins. Subsequently, Plaintiff worked under the direct supervision of Marlin Hall, who provided Plaintiff with good performance evaluations and was accommodating of

Plaintiff's disability-related needs.

25.    Supervisor Marlin Hall was "okay with providing this reasonable accommodation" when Plaintiff informed him of his need for frequent bathroom breaks due to his diabetes. Under Hall's supervision, Plaintiff was able to perform his job duties effectively while receiving the accommodation he needed.

26.    On February 24, 2024, while Plaintiff was performing his work duties, he was involved in a serious motor vehicle accident. Plaintiff was rear-ended while parked in a barricaded area during Gasparilla run setup, sustaining injuries to his spine, lower and mid back, neck, and shoulder, as well as experiencing numbness in his arms and fingertips.

27.    Following the February 24, 2024 accident, Plaintiff filed a workers' compensation claim with the appropriate authorities. The workers' compensation claim was assigned OJCC Case Number 24-007379RAA and was handled by Commercial Risk Management under carrier file number 89620073.

28.    During his employment, Plaintiff observed and complained about various workplace violations and inappropriate conduct by his coworkers. Specifically, Plaintiff complained to HR representative Rey

Rodriguez about coworkers using profanity in the workplace and employees blocking the time clock, preventing other employees from properly clocking in and out.

29.     Despite Plaintiff's legitimate complaints about workplace violations, Defendant took no action to investigate or remedy these issues. No investigation was conducted into Plaintiff's complaints, and the problematic behaviors continued unabated.

30.     At some point during his employment, Defendant installed a GPS monitoring system on Plaintiff's work vehicle. This GPS system was subsequently used by Defendant to track and monitor Plaintiff's movements throughout his workday.

31.     Defendant later claimed that GPS data showed Plaintiff was "out of assigned area" on several occasions. However, any movements outside of Plaintiff's assigned area were directly related to his disability-related need for frequent bathroom breaks due to his diabetes.

32.     Despite Plaintiff's legitimate explanation that his movements were necessitated by his medical condition, Defendant refused to accept this reasonable explanation and continued to use the GPS data against him.

33.     During his employment, Plaintiff's direct supervisor changed

from Marlin Hall to Julio Barrera. Unlike Hall, who had been accommodating and supportive, Barrera demonstrated hostility toward Plaintiff and began lowering Plaintiff's performance evaluation scores without justification.

34.    Plaintiff believes that Julio Barrera retaliated against him because "he was calling out all of the wrongdoings of the department." Barrera's retaliatory conduct included giving Plaintiff lower performance evaluations despite his continued satisfactory work performance.

35.    On February 23, 2025, Plaintiff was terminated from his employment by Julio Barrera. The termination meeting was conducted in person with only Barrera and Plaintiff present, and Plaintiff was required to sign termination papers.

36.    Defendant's stated reason for Plaintiff's termination was that GPS data showed he was out of his assigned area on several occasions. However, as Plaintiff explained, any movements were due to his disability-related need for frequent bathroom breaks, which constituted a reasonable accommodation under the ADA.

37.    Plaintiff's termination was pretextual and was actually motivated by his age, his disability, his filing of a workers' compensation

claim, and his complaints about workplace violations.

38.    Following his termination, Plaintiff applied for unemployment benefits but was denied. Plaintiff filed an appeal, but the denial was upheld after Defendant provided the same unfounded information to the unemployment office that it had used to justify his termination.

39.    After his termination from the Parks and Recreation Department, Plaintiff applied for several positions with other City of Tampa departments, including the Water Department, Mobility Department, and Stormwater Department.

40.    Despite being deemed eligible for various positions and meeting the qualifications, Plaintiff faced continued discrimination based on his age when attempting to secure employment with other City departments.

41.    On January 13, 2025, Plaintiff applied for a position as a Utility Technician with the Water Department. Plaintiff interviewed for this position with a panel consisting of Water Operations Supervisor Patrick Leonard, Water Team Leader Arviel Jenkins, and Water Team Leader Demetrious Wilson.

42.    During the interview process, one supervisor told Plaintiff that he thought Plaintiff was a good hire and had voted to hire him, but other

hiring supervisors stated that Plaintiff was "too old."

43.    At a karaoke bar, Arviel Jenkins made a direct discriminatory statement to Plaintiff, telling him "between you and I, they won't hire you because of your age. You're too old."

44.    Despite interviewing well and being qualified for the positions, Plaintiff was not hired for any of the City positions he applied for due to age discrimination.

45.    On October 1, 2025, Plaintiff filed an internal complaint with Defendant regarding the discrimination and retaliation he had experienced.

46.    Employee Relations Specialist William Blodgett conducted an internal investigation into Plaintiff's complaint. The investigation was completed on October 27, 2025.

47.    On December 11, 2025, Plaintiff was notified that the internal investigation had concluded that his complaint "cannot be substantiated" because the violation could not be corroborated as there were no other witnesses. The investigation found that City of Tampa's B1.1 Policy - Equal Opportunity may have been violated, but the complaint could not be substantiated.

48.    The internal investigation was inadequate and failed to properly

investigate Plaintiff's legitimate claims of discrimination and retaliation.

49. As a direct and proximate result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered significant financial hardship. All of his bills are months behind, and his home is in preforeclosure.

50. The financial strain caused by Defendant's unlawful actions has devastated Plaintiff's personal life. Plaintiff's wife has asked for a divorce due to the financial hardship and emotional toll caused by his wrongful termination.

51. Plaintiff has also suffered significant health consequences as a result of Defendant's unlawful actions, including worsening high blood pressure, diabetes complications, depression, migraine headaches, loss of sleep, weight fluctuations, and feelings of insecurity.

52. Adding to the retaliation Plaintiff faced for filing his workers' compensation claim, Plaintiff experienced difficulties obtaining proper medical treatment for his work-related injuries. Dr. Bauer stated he was unable to treat Plaintiff further due to a pre-existing condition, and authorization for Plaintiff's return appointment was denied, further demonstrating Defendant's retaliatory conduct.

53. Due to the workers' compensation issues and Defendant's handling of his claim, Plaintiff was forced to retain workers' compensation attorney Erika Brenneman, Esq. of Farah & Farah law firm to represent his interests in the workers' compensation matter.

54. The pattern of discrimination, retaliation, and denial of reasonable accommodations continued throughout Plaintiff's employment and extended beyond his termination through Defendant's refusal to hire him for other municipal positions for which he was qualified.

55. Defendant's conduct has caused Plaintiff ongoing harm and has created a hostile work environment that violated federal and state anti-discrimination laws.

56. At all times relevant herein, Plaintiff was a qualified individual with a disability who, with or without reasonable accommodation, could perform the essential functions of his position with Defendant.

57. At all times relevant herein, Plaintiff was qualified for the positions he applied for with other City departments and was rejected solely due to his age.

58. Defendant's actions constitute a pattern of discrimination based on age and disability, retaliation for filing a workers' compensation claim,

and retaliation for opposing discriminatory practices in violation of federal and state law.

**<u>COUNT I</u>**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Disability Discrimination / Failure to Accommodate**
**42 U.S.C. §§ 12101-12213**

59.     Plaintiff realleges and incorporates by reference paragraphs 1 through 58 of this Complaint as though fully set forth herein.

60.     Plaintiff has diabetes, which constitutes a disability within the meaning of the ADA.

61.     At all times material, Plaintiff was a qualified individual with a disability because he could perform the essential functions of his position as an Automotive Equipment Operator II, with or without reasonable accommodation.

62.     At all times material, Defendant was Plaintiff's employer within the meaning of the ADA.

63.     Defendant knew of Plaintiff's disability and knew that, because of his diabetes, Plaintiff required frequent bathroom breaks in order to perform his job.

64.     Plaintiff requested, and Defendant through supervisor Marlin

Hall acknowledged, the reasonable accommodation of frequent bathroom breaks.

65.    Plaintiff was able to perform his job duties while using that accommodation.

66.    Defendant later used GPS data from Plaintiff's work vehicle to monitor Plaintiff's movements and accused him of being outside his assigned area.

67.    The movements for which Plaintiff was criticized were caused by, or directly related to, Plaintiff's disability and his need to take bathroom breaks.

68.    Despite knowing of Plaintiff's disability and accommodation need, Defendant failed to reasonably accommodate Plaintiff and treated disability-related conduct as misconduct.

69.    Defendant refused to honor Plaintiff's accommodation and failed to appropriately address Plaintiff's explanation that the GPS-related deviations were caused by his disability.

70.    Defendant discriminated against Plaintiff because of his disability by denying him a reasonable accommodation and by using conduct caused by his disability and accommodation need as a basis for

discipline and termination.

71.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, mental anguish, humiliation, and other compensatory damages recoverable under the ADA.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests:

A.   A declaration that Defendant violated the ADA;

B.   Back pay, lost benefits, and other make-whole relief;

C.   Reinstatement or, in lieu thereof, front pay;

D.   Compensatory damages recoverable under the ADA;

E.   Pre-judgment and post-judgment interest as allowed by law;

F.   Reasonable attorneys' fees, costs, and litigation expenses as allowed by law; and

G.   Such other relief as the Court deems just and proper.

## COUNT II
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
**Retaliation**
**42 U.S.C. §§ 12101-12213**

72.   Plaintiff realleges and incorporates by reference paragraphs 1

through 58 of this Complaint as though fully set forth herein.

73. At all times material, Defendant was Plaintiff's employer within the meaning of the ADA.

74. Plaintiff engaged in protected activity under the ADA by requesting a reasonable accommodation for his diabetes, including frequent bathroom breaks.

75. Defendant knew Plaintiff engaged in that protected activity.

76. After Plaintiff requested the accommodation, Defendant subjected Plaintiff to materially adverse actions, including heightened scrutiny, reliance on GPS monitoring to question his bathroom-related movements, discipline, and termination.

77. Defendant's adverse actions were causally related to Plaintiff's request for reasonable accommodation.

78. Defendant retaliated against Plaintiff because he requested an accommodation and asserted rights protected by the ADA.

79. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, mental anguish, humiliation, and other compensatory damages recoverable under the ADA.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests:

A.     A declaration that Defendant violated the ADA's anti-retaliation provisions;

B.     Back pay, lost benefits, and other make-whole relief;

C.     Reinstatement or, in lieu thereof, front pay;

D.     Compensatory damages recoverable under the ADA;

E.     Pre-judgment and post-judgment interest as allowed by law;

F.     Reasonable attorneys' fees, costs, and litigation expenses as allowed by law; and

G.     Such other relief as the Court deems just and proper.

<u>COUNT III</u>
**VIOLATION OF**
**THE AGE DISCRIMINATION IN EMPLOYMENT ACT**
**Age Discrimination**
**29 U.S.C. §§ 621-634**

80.     Plaintiff realleges and incorporates by reference paragraphs 1 through 58 of this Complaint as though fully set forth herein.

81.     At all times material, Plaintiff was over the age of forty and was therefore a member of the class protected by the ADEA.

82.     At all times material, Defendant was an employer within the

meaning of the ADEA.

83.    Plaintiff was qualified for his position with Defendant.

84.    After Plaintiff's separation from the Parks and Recreation Department, Plaintiff also applied for other positions with Defendant for which he was qualified, including positions in the Water, Mobility, and Stormwater Departments.

85.    Defendant refused to hire Plaintiff for positions for which he was qualified.

86.    Defendant's decision not to hire Plaintiff was because of his age.

87.    In support of that allegation, Plaintiff was told during the Utility Technician hiring process that other decisionmakers considered him "too old," and Arviel Jenkins told Plaintiff that he would not be hired because of his age.

88.    Defendant's refusal to hire Plaintiff because of his age violated the ADEA.

89.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages recoverable under the ADEA, including lost wages, lost benefits, loss of earning capacity, and, to the extent proven, liquidated damages for a willful violation.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests:

A.   A declaration that Defendant violated the ADEA;

B.   Back pay, lost benefits, and other make-whole relief;

C.   Reinstatement or front pay, as appropriate;

D.   Liquidated damages to the extent authorized by the ADEA and supported by the evidence;

E.   Pre-judgment and post-judgment interest as allowed by law;

F.   Reasonable attorneys' fees, costs, and litigation expenses as allowed by law; and

G.   Such other relief as the Court deems just and proper.

## COUNT IV
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
### Retaliation
### 42 U.S.C. § 2000e et seq.

90.   Plaintiff realleges and incorporates by reference paragraphs 1 through 58 of this Complaint as though fully set forth herein.

91.   At all times material, Defendant was an employer within the meaning of Title VII.

92.   Plaintiff engaged in protected activity under Title VII by

[complaining about and opposing conduct that Plaintiff reasonably believed constituted unlawful discrimination prohibited by Title VII].

93.    Plaintiff's protected activity included [complaints to Human Resources and/or management opposing discriminatory treatment in the workplace].

94.    Defendant knew Plaintiff engaged in that protected activity.

95.    After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including increased scrutiny, lower evaluations, and termination.

96.    The materially adverse actions were causally related to Plaintiff's protected activity.

97.    Defendant thereby retaliated against Plaintiff in violation of Title VII.

98.    As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages including lost wages, lost benefits, loss of earning capacity, emotional distress, mental anguish, humiliation, and other compensatory damages recoverable under Title VII.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests:

A.     A declaration that Defendant violated Title VII's anti-retaliation provisions;

B.     Back pay, lost benefits, and other make-whole relief;

C.     Reinstatement or, in lieu thereof, front pay;

D.     Compensatory damages recoverable under Title VII;

E.     Pre-judgment and post-judgment interest as allowed by law;

F.     Reasonable attorneys' fees, costs, and litigation expenses as allowed by law; and

G.     Such other relief as the Court deems just and proper.

## COUNT V
### VIOLATION OF
### FLORIDA WORKERS' COMPENSATION RETALIATION STATUTE
### Retaliation for Filing Workers' Compensation Claim
### Fla. Stat. § 440.205

99.     Plaintiff realleges and incorporates by reference paragraphs 1 through 58 of this Complaint as though fully set forth herein.

100.     At all times material, Plaintiff was an employee of Defendant within the meaning of section 440.205, Florida Statutes.

101.     On February 24, 2024, Plaintiff suffered a work-related injury in a motor vehicle accident while performing his job duties.

102.    Plaintiff thereafter filed a workers' compensation claim and exercised rights protected by Florida's workers' compensation law.

103.    Defendant knew Plaintiff had filed a workers' compensation claim and was exercising protected rights.

104.    After Plaintiff filed his workers' compensation claim, Defendant subjected Plaintiff to increased scrutiny and adverse treatment.

105.    Defendant ultimately terminated Plaintiff.

106.    Defendant terminated Plaintiff, and otherwise discriminated against him, because he filed a workers' compensation claim and exercised rights protected by chapter 440.

107.    Defendant's conduct violated section 440.205, Florida Statutes.

108.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages including lost wages, lost benefits, loss of earning capacity, emotional distress, mental anguish, humiliation, and other damages recoverable under Florida law.

**WHEREFORE**, Plaintiff demands judgment against Defendant and requests:

A.    A declaration that Defendant violated section 440.205, Florida Statutes;

B.      Back pay, lost benefits, and other make-whole relief;

C.      Reinstatement or, in lieu thereof, front pay;

D.      Compensatory damages recoverable under Florida law;

E.      Pre-judgment and post-judgment interest as allowed by law;

F.      Taxable costs as allowed by law; and

G.      Such other relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury.

Date this 30th day of March 2026.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com